IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DURO CORPORATION, | ) | CASE NO.: 1:17 CV 1127 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| CANADIAN STANDARDS ASSOCIATION, | ) | |
| aka THE CSA GROUP, | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |

This matter is before the Court on Defendant CSA Group's [Partial] Motion to Dismiss for Failure to State a Claim. (ECF #14). Plaintiff, Duro Corporation filed an Opposition, and Defendant CSA Group submitted a Reply in further support of its motion. (ECF #18, 19). After careful consideration of the briefs and a review of all relevant authority, Defendant's Motion to Dismiss is GRANTED in part, and DENIED in part.

# FACTS[1]

Plaintiff's Complaint raises the following claims:

(1) Misappropriation of Trade Secrets in Violation of the Ohio Uniform Trade Secrets Act, O.R.C. §1333.01, *et seq*.

(2) Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b).

(3) Violation of the Ohio Deceptive Trade Practices Act

(4) Unfair Competition and False Advertising Under the Lanham Act, 15 U.S.C. §1125(a).

(5) Breach of Contract.

Defendant asks that Counts One through Four be dismissed, but does not seek dismissal of the Plaintiff's breach of contract claim at this time.

The Complaint alleges that Plaintiff, Duro Corporation ("Duro") is a distributor of high end gas ranges throughout North America. Defendant CSA Group ("CSA"), is a not-for-profit consumer product safety testing organization which tests products for compliance with Canadian and American consumer safety standards, and issues a "Certificate of Compliance" to those products that meet the requisite standards. A non-party, Hyxion Metal Industry ("Hyxion") manufactures Duro Ranges in Guangdong, China.

According the Complaint, Hyxion used designs it acquired for the manufacture of Duro Ranges to begin manufacturing its own brand of "knock off" ranges which are virtually identical

---

[1] The facts are derived from the allegations in the Complaint. Allegations in the Complaint are accepted as true for purposes of this motion, in accordance with the standard for dismissal under Fed. R. Civ. P. 12(b)(6).

in design to Duro Ranges, but which use cheaper parts. These ranges have been sold under various brand names to distributors and retailers in North America, including to distributors and retailers of the Duro Ranges.

Duro Ranges have been certified by CSA . Duro highlights the CSA certification in its advertising and believes that this certification is critical to the success and profitability of its business. The Complaint alleges that CSA's certification of its product increases sales and profits for Duro. The Hyxion "knock offs" have also been certified by CSA, and this certification allegedly increased the sale of Hyxion ranges creating more competition and negatively affecting the sale of Duro Ranges.

The Complaint's main allegation is that CSA's certification of the Hyxion ranges was improper. Plaintiff claims that CSA believed the Hyxion ranges were identical in design to the Duro Ranges and, even though Hyxion used different parts. Therefore, CSA used the Duro Range drawings and test results to certify corresponding Hyxion ranges instead of independently testing the Hyxion ranges. Further, the CSA website which advertises its certification of the ranges refers to the Hyxion ranges as having the trade name "Hyxion/Duro" even though Duro is not associated or affiliated with the Hyxion ranges.

## **STANDARD OF REVIEW**

On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990). In

evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." *Jones v. City of Carlisle, Ky.*, 3 F.3d. 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D. Ohio 1993). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl' Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly* at 555. In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## ANALYSIS

A. Misappropriations of Trade Secrets under the Ohio Uniform Trade Secrets Act

The Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code § 1333.01, *et seq.*, creates a private cause of action for the unauthorized use of trade secrets. In order to prevail on such a claim, a Plaintiff in Ohio must establish: (1) the existence of a trade secret; (2) the acquisition of that trade secret through a confidential relationship; and, (3) the unauthorized use of that trade secret. *See, Thermadyn Corp. v. 3M Co.*, 593 F.Supp. 2d 972, 985 (N.E. Ohio

2008)(citing *Heartland Home Finance, Inc. v. Allied Home Mortg. Capital Corp.*, 258 Fed.Appx. 860, 861 (6th Cir. 2008). The OUTSA defines a trade secret as

> information , including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code §1333.61(D). In this case, Plaintiff's argues that both its design drawings, and the CSA test results for its products are Duro trade secrets.

The Complaint alleges that Duro's design drawings and the product test results were obtained by CSA through a confidential relationship defined by their Product Service Agreement (" PSA"), and that CSA used the Duro drawings and test results without Duro's authorization to certify Hyxion's competing products. It also alleges that Duro took reasonable steps to keep the drawings and test results confidential. CSA, in turn, argues that because Duro provided the drawings to its manufacturer, Hyxion, it did not take reasonable steps to maintain their secrecy and, therefore, the drawings should not be afforded trade secret protection. Further, CSA contends that under the terms of the PSA, the test results do not belong to Duro, and therefore cannot be Duro's trade secrets.

The Complaint sufficiently sets forth a claim for misappropriation of trade secret with

regard to the Duro design drawings.[2] There is no question that product design drawings include information that could satisfy the first condition in the definition of a trade secret. Further, under the terms of the PSA,[3] Duro's design drawings are to be treated as confidential information. The fact that Duro admits to providing drawings to Hyxion, in its role as manufacturer of the Duro products, does not necessarily undermine the trade secret status of the drawings. Disclosure of proprietary information, as necessary, to parties essential to the manufacturing and marketing of a product does not strip that information of its trade secret status if reasonable steps are taken to ensure the confidentiality of the information. Duro alleges that it took steps to protect the secrecy of that information, and the Court must accept that allegation as true at this stage of the litigation.

Conversely, the Plaintiff has not made a viable claim for trade secret status with regard to the CSA test results for the Duro Ranges. The PSA does not assign confidential status to the test results obtained by CSA. The PSA specifies that "Confidential Information does not include information which . . . is independently developed by CSA." Although Plaintiff argues that the

---

[2] Defendant also argued that Plaintiff's claim under the OUTSA should fail because it did not plead facts sufficient to address every factor under the analysis set forth by the Ohio Supreme Court in *State ex. Rel. Plain Dealer v. Ohio Dep't of Ins.*, 687 N.E.2d 661, 672 (1997). Plaintiff alleged every element necessary to a claim under the OUTSA statute. On a motion to dismiss for failure to state a claim, a plaintiff is not required to set forth specific factual allegations to satisfy every criteria in a test used to balance the evidence when determining whether those elements have eventually been proven. *See, Sacksteder v. Senney*, 2012 WL 4480695, at *20 (Ohio Ct. App. Sept. 29, 2012).

[3] The PSA is before the Court as an Exhibit to the Defendant's Motion to Dismiss. Its consideration has not been challenged by the Plaintiff, and, in fact, the Plaintiff has also cited to its terms in its Complaint, and in support its own arguments in opposition to the Motion to Dismiss. The Court, therefore, may consider the terms of the PSA when deciding this motion.

test results are not independently developed by CSA, this argument fails to persuade. The entire agreement centers around a contract under which CSA will perform tests on Duro's Ranges, will evaluate the results and determine whether the products can be certified. The fact that CSA necessarily used the Duro designs and products to conduct its testing does not mean that the results derived were not developed independently by CSA. There is no allegation that Duro participated in the testing in any way, other than to produce the materials that were to be tested and evaluated. In addition, under the terms of the PSA, the test results are not the sole property of Duro.[4] Duro cannot claim trade secret status for information it does not exclusively own.

B. <u>Misappropriation of Trade Secrets under the Defend Trade Secrets Act</u>

The Defend Trade Secrets Act of 2016 ("DTSA") provides a private cause of action for owners of misappropriated trade secrets, "if the trade secret is related to a product or service or intended for use in, interstate or foreign commerce." 18 U.S.C. §1836. The DTSA became effective on May 11, 2016 and is not retroactive. 18 U.S.C. §1833 Note; Pub. . No. 114-153, § 2(e); *Gold Medal Prods. Co. v. Bell Flavors and Fragrances, Inc*., 2017 WL 1365798, at *3 (S.D. Ohio, April 14, 2017). The Complaint in this case does not allege any misappropriation occurring on or after May 11, 2016. According to the Complaint, CSA and Duro entered into an agreement for CSA to test and certify Duro Ranges on or about June 12, 2006. Hyxion began using Duro designs to manufacture competing ranges around October or November of 2012. The Complaint does not specify when Hyxion contracted with CSA for testing of the "knock-

---

[4]

"Detailed test results arising from Services provided under this Agreement will not be divulged to the Client or to any other person or persons except with the mutual consent of the Client and CSA . . . ." (ECF #15, Ex. 1, Section 2.7).

-7-

off" products, or when CSA allegedly used the Duro design drawings to certify the Hyxion products.

When confronted with its failure to allege any misappropriation occurring after the May 11, 2016 effective date of the DTSA, Plaintiff did not argue that the actual use of the drawings occurred after the DTSA effective date.  Rather, Duro contends that the Complaint alleges a "continuing misappropriation" by claiming that "CSA's violation of the DTSA is continuing each day that Hyxion utilizes the CSA Certification."  This does not, however, equate to an allegation that CSA continued any misappropriation of Duro's design drawings beyond the original misuse, nor does it allege misappropriation on or after the DTSA effective date. Hyxion's use of the allegedly improper certification is not the alleged misappropriation of trade secrets.  Hyxion's continued utilization of the certification may be relevant to the duration and amount of damages caused by the alleged misappropriation, but it does not evidence CSA's continued misappropriation of Duro's design drawings.

There is no allegation in the Complaint, or otherwise, that CSA used Duro's drawings more than once, or that the alleged misappropriation of those drawings occurred after May 11, 2016.  Consequently, the Complaint has not stated any direct or inferential factual allegations that would raise Plaintiff's right to relief on this count above the speculative level.  This cause of action cannot, therefore, survive dismissal under the *Twombly* standard, because there is no claim that the alleged misappropriation occurred on or after the effective date of the DTSA.

C. Ohio Deceptive Trade Practices Act

The Ohio Deceptive Trade Practices Act ("ODTPA") creates a private cause of action

providing for injunctive and monetary relief for anyone who has been or is likely to be injured by a deceptive trade practice. Among those practices that are considered to be deceptive are (1) passing off good or services as those of another (2) causing the likelihood of confusion or misunderstanding as to affiliation, connection , or association with, or certification by another; (3) representing that good or services have sponsorship, approval, characteristics . . . status, affiliation, or connection that they do not have; (4) representing that goods are of a certain standard, quality, or grade. . . if they are of another. O.R.C. §4165.02(1), (3), (7), and (9). The parties, in their arguments for and against dismissal of this claim, conflate the ODTPA claim with the false advertising claim under the Lanham Act. It is true that false advertising claims under both the state and federal law have been required to prove substantially similar elements including the existence of false or misleading material statements which have or have the tendency to deceive a substantial part of the target audience, and have caused harm to the plaintiff. However, as outlined above, the ODTPA prohibits practices other than just false advertising.

In this case, the Plaintiff alleges two separate deceptive statements or practices: (1) CSA's advertisement of its own services, specifically the statement that its certification mark should offer "peace of mind to retailers, regulators, consumers and end users the word over by indicating that your products have been independently tested and have met the required standards for safety & performance," and, (2) CSA's certification of the Hyxion products. (ECF #1, ¶ 46).

The Complaint contains no factual allegations that would support a claim that Duro was harmed by the first statement. In fact, Duro admits that the CSA certification provided a great benefit to

Duro's business. The Complaint states as follows:

> Duro advertises its Duro Ranges as CSA certified. The CSA certification is critical to the success and profitability of its business, in that the Certifications instill confidence in both the distributors of the Duro Ranges, and in the public at large, that the Duro Ranges meet all applicable consumer safety standards. As a result, the CSA Certificates of Compliance pertaining to the various models of the Duro Ranges increase the sales of the Duro Ranges and the profits those sales generate for Duro.

(ECF #1, ¶ 14). This admission verifies the veracity of the "peace of mind" statement allegedly used in the CSA advertisement by acknowledging that distributors and the public accept the CSA certification as meaningful and that it provides a financial benefit to Duro.[5] There is, therefore, absolutely no viable inference that can be taken from the Complaint to support a claim that Duro was damaged or is likely to be damages as a result of this statement.

CSA's certification of Hyxion presents a contrasting scenario. Whether or not the listing of Hyxion's certification on the CSA website constitutes advertising, false certification could also be a violation of the ODTPA under O.R.C. §4165.02 (3), (7), and (9). The Complaint, at the very least, alleges that CSA represented, through its certification, that Hyxion's products met certain safety standards, even though CSA had not properly tested the products. It alleges the materiality of this alleged misrepresentation, and creates an clear inference that the misrepresentation would, at least, have a tendency to deceive the distributors and consumers of these products.[6] The Complaint further alleged that CSA listed Hyxion's products as having a

---

[5] If Duro truly believes that CSA's independent testing claims are actually false and, nonetheless, has continued to use the Certification in advertising to bolster its own sales, Duro, itself could potentially be at risk of violating of the ODTPA.

[6] Although the Complaint does not specifically allege that the Hyxion products would not have obtained certification absent the improper use of the Duro's drawings and test

trade name of "Hyxion/Duro" on its website which could have caused consumer confusion over whether Hyxion was affiliated or associated with Duro. Finally, the Complaint clearly alleges that Duro suffered damages in the form of lost sales to Hyxion resulting from Hyxion's improper certification. These allegations are sufficient to state a claim for a violation of the ODTPA based on CSA's purportedly improper certification of the Hyxion products.

D. Lanham Act

The Lanham Act applies only to "commercial advertising or promotion." The parties agree that the Sixth Circuit has defined "commercial advertising or promotion" as (1) commercial speech, (2) for the purpose of influencing customers to buy the defendant's goods or services, (3) that is disseminated either widely enough to the relevant purchasing public to constitute advertising or promotion within that industry or to a substantial portion of the plaintiff's or defendant's existing customer or client base. *Grubbs v. Sheakley Grp., Inc*., 807 F.3d 785, 801 (6th Cir. 2015).

As discussed above, the only speech that has been properly alleged to have caused harm to the Plaintiff is CSA's statement of certification of the Hyxion products. CSA allegedly posted a list of certified products, including the Hyxion ranges, on its own website. For purposes of this motion, Plaintiff has sufficiently pled that the statement of certification is commercial speech that is disseminated to a substantial portion of the plaintiff and/or

---

results, this claim can be fairly inferred from the allegations in the Complaint. It is difficult to imagine how Duro would be able to prove deception, or causation of damages if it cannot eventually prove that CSA would not have certified the Hyxion products but for the alleged misuse of Duro's information.

defendant's existing customer or client base. The Complaint, however, fails to allege or infer that this statement was made for the purpose of influencing customers to buy CSA's goods or services. In fact, Duro does not even argue that this element of the "commercial advertising or promotion" definition was satisfied in its response to the Defendant's Motion to Dismiss. Rather, it cites a single case, not within the Sixth Circuit, that supposedly recognized Lanham Act claims relating to commercial speech that was not explicitly intended to influence customers to buy the Defendant's goods or services. *See, Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263 (S.D.N.Y. 2016).

This Court is bound to follow the Sixth Circuit's decision in *Grubb*, and cannot be persuaded to eschew its unambiguous holdings based on a single District Court's decision, let alone a District Court that is not bound by the same Sixth Circuit holding. In addition, although the *Enigma* court did relax the requirement that a Lanham Act violation must involve commercial speech intended to influence the Defendant's own customers to buy its goods or services, it did not abandon it entirely, as Duro is now asking the Court to do. In *Enigma*, the court recognized that although the Defendant was not seeking to increase sales of its own product through the speech at issue, it was intending to increase the sales of an affiliated product from which it received commissions. Therefore, the speech was intended to directly increase Enigma's own profits. No such economic incentive exists for CSA's certification of the Hyxion ranges under the alleged facts of this case. Therefore, there is no basis upon which to create an exception to the requirements *Grubb*, even if the Court had the authority or will to do so. Thus, the only speech that has been properly alleged to have damaged Duro does not qualify as "commercial advertising or promotion" under the Lanham Act, and this claim must be

dismissed.

## **CONCLUSION**

For all of the above reasons, the Defendant's Motion to Dismiss (ECF #14) is GRANTED in part, and DENIED in part. Counts Two and Four are hereby dismissed with prejudice. Count One remains intact, and Count Three is limited to the statement relating to Hyxion certification, as outlined above. Count Five was not challenged and, therefore, also remains. IT IS SO ORDERED.

                                                 /s/ Donald C. Nugent
                                                 DONALD C. NUGENT
                                                 United States District Judge

DATED:   December 11, 2017