UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DURO CORPORATION, | ) | CASE No. 1:17 CV 1127 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| CANADIAN STANDARDS ASSOC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter is before the Court on Plaintiff, Duro Corporation's Motion to Dismiss Canadian Standards Association's Counterclaim. (ECF #30). Canadian Standards Association ("CSA") filed an Opposition to the motion, and Duro Corporation ("Duro") filed a Reply in support. (ECF #31, 32). Having reviewed the parties' submissions, the Product Service Agreement, and all relevant law, the Court finds that Plaintiff's Motion should be GRANTED.

## BACKGROUND

The parties agree that the Defendant's Counterclaim asserts a breach of the Product Service Agreement ("PSA") entered into between Duro and CSA on or about July 12, 2006. According to CSA, the PSA is a non-exclusive license allowing Duro to display CSA's Certification Mark on its products. (ECF #31 at 5). The Certification Mark indicates that Duro complies with certain industry standards. (Id.) The alleged breach is based on Duro's failure to notify CSA that the United States Department of Energy ("DOE") initiated an enforcement

1

action against Duro for its failure to comply with federal regulations, in connection with a CSA-certified product.[1] CSA argues that this failure to notify violated the terms of Paragraph 5(c) of the PSA.[2] On July 15, 2014, the DOE "initiated an action to assess a civil penalty for failing to certify compliance and submit a certification report" for certain basic Duro cooking product models, required to ensure compliance with standards promulgated by the DOE to promote their energy conservation requirements. (ECF #27-2 at 2-3). There is no indication anywhere in the record that the DOE alleged a violation of the energy conservation requirements, only that Duro failed to provide a certification report showing compliance. Duro paid a fine, provided certifications, and the DOE dismissed the charge with prejudice on August 21, 2014, approximately five weeks after the action was initiated. (ECF #27-2).

Section 5 of the PSA (Notification and Corrective Action) memorializes the following agreement between the parties:

> Section 5.1 Notification to CSA: The Client agrees to notify CSA immediately of any reports of any incidents of significant injury or property damage it receives, or knowledge of potential hazards that may result in same, that involve the Certified Product.
>
> The Client agrees to:
>
> (a) keep records of all complaints received or incident reports as described in Section 5.1 that relate to compliance of the Product with the Requirements, including the Certification Report and related corrective action and make such records available to CSA upon request;
> (b) take appropriate corrective action with respect to such complaints or reports as described in Section 5.1 and notify CSA immediately of related pending and actual recalls or corrective action; and
> (c) notify CSA promptly upon notifying any regulatory authority of reports of significant injury or property damage or any action taken by such governmental entity with respect to Client's Certified Products. Without limiting the foregoing, this obligation shall arise upon notification made to the United States Consumer Product Safety Commission (CPSC) of any matter with respect to any Certified Product covered by the Agreement required to be reported under the

---

[1] Duro does not dispute that it did not notify CSA of the enforcement action initiated by the DOE.
[2] Although the Counterclaim states that Duro violated section 5(c), a review of the PSA, and the briefing by both parties make clear that it was referring to section 5.1(c) of the PSA. The Court will refer to the correct section 5.1(c) from here on out.

> US Consumer Product Safety Act or promptly upon receiving notice
> that the CPSC has been informed of such situation, together with the
> affected model designations and nature of the defect or failure.
>
> Section 5.2 Corrective Action: The Client agrees to cooperate with CSA and to
> undertake corrective actions as required by CSA, at the Client's expense, to
> ensure that Product bearing the Certification Mark is brought into compliance
> with the applicable Requirement. If corrective action is not taken, CSA reserves
> the right to take whatever legal recourse is needed to address the removal of the
> Certification Mark from the Product and/or advise appropriate parties.
>
> Section 5.3 Restrictions: In the event of the Client's default in respect of any
> terms of the Agreement or as part of corrective actions referred to in Section 5.2,
> CSA may, at its option: (i) institute restrictions on the Client's right to represent
> its Product as Certified. Such restrictions may include but are not limited to
> cancellation or immediate suspension, of the right of the Client to represent one or
> more, of its Products as Certified, subject to terms as determined by CSA; and/or
> (ii) conduct technical investigations, inspections or audits as necessary, at the
> Client's expense, which may be over and above the fees referenced in Sections
> 7.3 and 7.4, and which will be billed to the Client at CSA's actual cost.

(ECF #27-2). CSA generally alleges that Duro's failure to notify it of the DOE enforcement action caused it to suffer damages, but does not specify how it was damaged, or what damages it is seeking.

## STANDARD

On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990). In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

However, to withstand a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as

3

true, are sufficient to raise a right to relief above the speculative level." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)(internal quotation marks omitted)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A trial court will not accept conclusions of law or unwarranted inferences "that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011); "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl' Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). Rather, a plaintiff's complaint "must contain either direct of inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007)(citation and internal quotation marks omitted).

## ANALYSIS

Duro seeks to dismiss CSA's first Counterclaim on the grounds that the Counterclaim does not allege an actual breach of the agreement based on a fair reading of the PSA, and that CSA does not sufficiently allege any damage resulting from the asserted breach. CSA argues that Duro's failure to notify it of the DOE's enforcement action violated the plain language of Section 5.1 (c) of the PSA, and/or that the PSA language is ambiguous and must be read in its favor. It also contends that it satisfied the pleading requirements for alleging damages.

1. Allegations of Breach

The Counterclaim states that Duro's failure to notify CSA of the DOE's enforcement action against Duro for failure to certify compliance with certain energy conservation standards was a breach of Section 5.1(c) of the PSA, because the PSA requires notification "if any of Duro's CSA-certified products are subject to regulatory action" of "if any governmental entity

4

takes corrective action with respect to Duro products certified by CSA. . . ." (ECF #27, Counterclaims ¶¶ 3, 4, 13). The Counterclaim also attaches the PSA, which the Court may consider in determining whether a motion to dismiss should be granted. *See Chester*, 896 F.2d at 812.

Section 5.1(c) of the PSA states that Duro must notify CSA "upon notifying any regulatory authority of reports of significant injury or property damage" or "any action taken by such governmental agency with respect to [Duro's] Certified Products." (ECF #27-1, at 5). The action taken by the DOE for failure to provide certification of compliance with energy conservation standards does not trigger the notification clause of Section 5.1 (c). There is no allegation that Duro notified (or should have notified) the DOE or any other regulatory authority of reports of significant injury or property damage. Rather, CSA argues that the second phrase, "any action taken by such governmental agency," requires Duro to notify it whenever any governmental agency takes any action, of any kind, related to Duro's certified products. This reading of PSA language is overbroad and ignores the plain language of the agreement

Section 5.1(c) of the PSA states that Duro must notify CSA "upon notifying any regulatory authority of reports of significant injury or property damage" or "any action taken by such governmental agency with respect to [Duro's] Certified Products." (ECF #27-1, at 5). The action taken by the DOE for failure to provide certification of compliance with energy conservation standards does not trigger the notification clause of Section 5.1 (c). The plain language of the agreement requires Duro to notify it not when any governmental agency takes action, as argued by CSA, but only when "such governmental agency" takes action. The modifier "such" limits the scope of the subject "governmental agency" to the governmental agency described immediately above. The agency described immediately above in the PSA is a regulatory authority notified by Duro of reports of significant injury or property damage.[3] As

---

[3] This interpretation is bolstered by the context of the language within the PSA. All other language in this section of the PSA relates to Duro's obligations to notify CSA when there are any reports or risks of significant injury or property damage that results from the Certified Products so that CSA may assess whether corrections need to be made to the product in order to maintain its certification. (ECF #27-1 at 5). There is no mention of any concern for energy compliance, or more specifically, an action to enforce

5

there is no allegation the Duro has had occasion to notify the DOE or any other regulatory authority of such reports, there is no allegation that any "such governmental agency" has taken action in response, and no duty to notify CSA under the terms of the PSA.

2. Allegations of Damages

Duro also contends that CSA's counterclaim fails to adequately plead any damages caused by the asserted breach of the notification provisions in the PSA. The only reference to damages arising from this claim is a generalized statement that "[a]s a proximate and direct result of this breach of the Product Service Agreement, CSA Group suffered damages." (ECF #27, Counterclaims ¶ 17). The prayer for relief also states that CSA requests "damages in an amount to be determined at trial for Duro's failure to report the DOE's enforcement action." (ECF #27, at 11).

Damages are an essential element of a claim for breach of contract. *Anchor v. O'Toole*, 94 F.3d 1014, 1020 (6th Cir. 1996). Both parties have cited cases support their respective positions that a case should or should not be dismissed for failure to plead facts in support of damages. *See, e.g., Blake v. NVR, Inc.*, 2009 WL 10689655 (N.D. Ohio Nov. 9, 2009); *Rosul v. Klockemann*, 2015 WL 5233187 (N.D. Ohio Sept. 8, 2015). Even if damages are often not required to be pled with specificity or in detail, the standards articulated in *Twombly* and *Iqbal*, require that the claim set forth at least some factual basis upon which the existence of damages can be plausibly inferred.

There are no such facts alleged in CSA's counterclaim. There is no allegation that the failure to notify CSA of the DOE enforcement had any impact on CSA or its's certification process or requirements. There is no allegation that CSA suffered any monetary damage or was required to take any action based on the DOE's enforcement action. There is no allegation that the DOE's enforcement action alleged any defect, change, or insufficiency in the product that would affect its CSA certification. There is no allegation that CSA's brand or mark was or could

---

certification requirements that do not implicate any defect, risk, or shortcoming of the products themselves. There is also no allegation that violation of the DOE's compliance certification requirements had any relevance to or impact on the CSA certification requirements for those products.

6

have been devalued or otherwise affected by the enforcement action. Nor is there any indication that the PSA contemplated any damages resulting from a failure a notify CSA, other than the potential removal of the CSA certification mark, or Duro's willingness to bear the cost of correcting any deficiency and re-testing by CSA. There is no allegation that CSA sought or seeks to remove its certification mark; that CSA required correction or retesting; or that CSA bore any expense or responsibility relating to the DOE enforcement action. Further, the attachments to the Counterclaim indicate that the DOE dismissed its action within five weeks after Duro paid a fine and came into compliance with the energy conservation certification requirements.

CSA has provided literally nothing other than a conclusory legal assertion, and this Court is not bound to accept legal conclusions as true. There are no non-conclusory factual allegations that would show CSA suffered damages and is therefore entitled to relief, as required under Fed. R. Civ. P. 8(a)(2). It has provided nothing more than a formulaic recitation of the element of damages, a "naked assertion" devoid of "factual enhancement." *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). There are no factual allegations that would satisfy the requirements of *Iqbal* by allowing even a reasonable inference that CSA's assertion of injury is plausible. Therefore, CSA has failed to state a claim upon which relief can be granted, and dismissal is appropriate under Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Dismiss Canadian Standards Association's Counterclaim is GRANTED. (ECF #30). Count One of Defendant's Counterclaim is, hereby, dismissed with prejudice. IT IS SO ORDERED.

_____
Donald C. Nugent
United States District Judge

Date: June 25, 2018